J-S08014-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DANNY SENG | : | |
| | : | |
| Appellant | : | No. 1180 MDA 2021 |

Appeal from the Judgment of Sentence Entered July 9, 2021
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s):  CP-22-CR-0002743-2020

BEFORE:  BOWES, J., NICHOLS, J., and McCAFFERY, J.

MEMORANDUM BY BOWES, J.:                    **FILED:  MARCH 15, 2022**

Danny Seng appeals from the aggregate judgment of sentence of seven to fourteen years of incarceration, which was imposed after a jury convicted him of possession with intent to deliver ("PWID") heroin/fentanyl, PWID cocaine, conspiracy, recklessly endangering another person ("REAP"), and tampering with evidence.  We vacate Appellant's judgment of sentence and remand for a new trial.

On the morning of August 23, 2019, Appellant and two individuals, James Patterson ("Patterson") and Sean Quarles ("Quarles"), drove in a silver Infiniti to the R&M Variety shop in Harrisburg.  While inside the store, video surveillance captured the three men standing at the counter from 11:48 a.m. to 11:51 a.m.  During that period, Appellant pointed to a digital scale. Ultimately, Patterson purchased that digital scale, as well as a mortar and pestle, a Pyrex measuring cup, and a straining utensil, all of which were

consistent with the manufacturing of crack cocaine. The three men then left in the silver Infiniti.

At approximately 7:30 p.m., Patrol Officer Andrew Cortelazzi observed a silver Infiniti with the license plate "LCR 2079" in an area of the city known for drug-trafficking. The Infiniti had illegal tint on the rear windows and an inoperable center brake light. The officer followed the vehicle until it began to park. At that time, the officer activated his emergency lights to initiate a traffic stop, but the Infiniti drove away at a high rate of speed. As Officer Cortelazzi pursued the vehicle, he observed a blue bag being thrown from the passenger's side of the Infiniti. Officer Cortelazzi notified other officers to be on the lookout for the vehicle. In the meantime, he stopped his pursuit to investigate the discarded bag. Inside the bag, he recovered what was later tested and confirmed as a waxy paper packet containing 12.32 grams of heroin and fentanyl, a knotted plastic bag corner containing one MDA tablet, one white glassine bag marked with a snake head image and "420 VENOM" with cocaine residue, five pink glassine bags containing a total of 0.85 grams of heroin and fentanyl, one partial pink glassine bag containing residue, one white glassine bag marked with a snake head image and "420 VENOM" with residue, one knotted plastic bag containing 12.3 grams of cocaine base, 0.06 grams of marijuana, $106.01 in cash, a piece of paper, numerous rubber bands, grains of rice, one metal razor blade, a pencil, a plastic toy, metal scissors, four empty plastic bags, a firearm holster, a straw with residue, and a digital scale.

Later that evening, Patrol Officer Brian Carriere received an advisory report of an abandoned vehicle on Bombaugh Street in Harrisburg. Officer Carriere responded to the area and found the silver Infiniti with license plate "LCR 2079" parked in the middle of the street. Edwin Aleman, Sr. ("Aleman"), who owns a garage in the area, had earlier observed the Infiniti stop in the middle of the road because another vehicle was obstructing traffic. The driver and front seat passenger emerged from the vehicle and ran through an alleyway. Officers reviewed footage from a video camera on a nearby chicken coop and identified the two men as Appellant and Quarles. At trial, Aleman viewed the same video and identified the two men in the video as the same men who parked the Infiniti near his garage and ran through the alley.

The Infiniti was towed and on August 26, 2019, a search warrant was executed. The search revealed, *inter alia*, a cell phone and a receipt from the R&M Variety Shop. The car and some of the items were dusted for finger and palm prints. Patterson was the source for the print lifted from the cell phone, while Patterson, Quarles, ad Appellant were sources for some of the nineteen prints lifted from inside the vehicle. As a result of the foregoing, an arrest warrant was issued for Appellant.

Meanwhile, and also on August 26, 2019, Appellant's state parole agent, Erin Henry ("Henry"), visited Appellant's approved address and had a meeting with him without issue. Some time after that visit, Henry learned of the arrest warrant. She attempted to contact Appellant, but he could no longer be found at his approved address. Appellant did not notify Henry of an address change,

despite being required to do so, and did not contact her after the August 26, 2019 visit. A search warrant was executed at Appellant's approved residence in September, which revealed a digital scale and a small amount of marijuana. However, Appellant was not present. The United States Marshals Fugitive Task Force attempted to locate Appellant, but he was not located until his arrest in June 2020.

On May 17, 2021, Appellant proceeded to a four-day joint jury trial with co-defendant Quarles. The Commonwealth presented the above evidence, including testimony from two state parole agents who had supervised Appellant over Appellant's objection. Additionally, an expert witness opined that the items recovered from the discarded blue bag were possessed with the intent to deliver.

Appellant testified on his own behalf. According to Appellant, he pointed to the scale to let Patterson know he had the same scale at home for his personal marijuana use. As to the location where the vehicle was ultimately abandoned, Appellant testified that he had gone with Quarles and Patterson to Aleman's garage for an inspection before going to the R&M Variety Store, but because Quarles did not have insurance documents, they had to return later. When Quarles picked up Appellant later in the day to return to the garage, Appellant sat in the front passenger's seat. During the ensuing chase, Appellant asked him to pull over or to let him out, but Quarles sped away from the officer and discarded the blue bag from the vehicle. Appellant did not know what was in the bag. He claimed that he ran from the scene and stopped

reporting to parole out of fear of being labeled a snitch and because he did not yet have enough money to hire legal counsel for the instant charges.

At the conclusion of the trial, the jury convicted Appellant of all charges.[1] On July 9, 2021, the trial court sentenced Appellant to the following concurrent terms of incarceration: seven to fourteen years for PWID heroin/fentanyl, two and one-half to five years for PWID cocaine, seven to fourteen years for conspiracy, one to two years for REAP, and 9 months to two years for tampering with evidence. Appellant filed a post-sentence motion, which the trial court denied. This timely filed appeal followed. Both Appellant and the trial court have complied with Pa.R.A.P. 1925. Appellant presents the following issues for our review:

> A. Whether the trial court erred in allowing state parole agents to testify Appellant was on state parole; implicating Appellant's prior conviction for an unrelated offense?
>
> B. Whether the trial court erred in allowing the testimony of Appellant's state parole agents regarding Appellant's behavior while on supervision?
>
> C. Whether the trial court erred in accepting the jury's verdict where the Commonwealth failed to present sufficient evidence of possession?
>
> D. Whether the trial court erred in accepting the jury's verdict which was contrary to the evidence presented at trial, which supported only co-defendant Quarles possession of the narcotics?

Appellant's Brief at 4 (unnecessary capitalization omitted).

---

[1] Quarles was also convicted as charged. He has separately appealed his judgment of sentence to this Court at 1204 MDA 2021.

We begin with Appellant's sufficiency challenge.[2] Whether the evidence was sufficient to support the conviction presents a matter of law; our standard of review is *de novo* and our scope of review is plenary. ***Commonwealth v. Walls***, 144 A.3d 926, 931 (Pa.Super. 2016) (citation omitted). In conducting our inquiry,

> [w]e assess the evidence and all reasonable inferences drawn therefrom in the light most favorable to the verdict-winner. We must determine whether there is sufficient evidence to enable the fact-finder to have found every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for that of the factfinder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered.
>
> Whether evidence was properly admitted does not factor into our analysis, as sufficiency is not determined upon a diminished record. Lastly, the trier of fact, while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part, or none of the evidence.

---

[2] We begin with Appellant's sufficiency challenge because, if granted, the remedy would be discharge on his PWID charges, whereas the remedy for a successful challenge to the admissibility or weight of the evidence would be a new trial. ***See Commonwealth v. Widmer***, 744 A.2d 745, 751 (Pa. 2000).

*Commonwealth v. Bowens*, 265 A.3d 730, 740–41 (Pa.Super. 2021) (cleaned up).

Specifically, Appellant challenges the sufficiency of the Commonwealth's evidence to prove the possession element of his PWID charges. *See* Appellant's brief at 19. According to Appellant, nobody testified that he was the one who threw the blue bag out the window and nothing found on him or in his residence supported his possession of the items in the bag. *Id*. at 20. Thus, Appellant contends that he was merely present near the bag and that was insufficient to convict him of PWID. *Id*. at 21.

Since Appellant was not found to be in actual possession of the drugs, the Commonwealth's case rested on constructive possession, which is "a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement. Constructive possession is an inference arising from a set of facts that possession of the contraband was more likely than not." *Commonwealth v. Mudrick*, 507 A.2d 1212, 1213 (Pa. 1986). The Commonwealth must establish "conscious dominion," which is defined as "the power to control the contraband and the intent to exercise that control." *Commonwealth v. Parker*, 847 A.2d 745, 750 (Pa.Super. 2004) (citation omitted). In assessing whether the Commonwealth has established the power and intent to exercise control, we look to the totality of the circumstances:

> Constructive possession may be proven by circumstantial evidence and the requisite knowledge and intent may be inferred from examination of the totality of the circumstances. Moreover,

- 7 -

we review circumstantial evidence under the same standard as direct evidence, *i.e.*, that a decision by the trial court will be affirmed so long as the combination of the evidence links the accused to the crime beyond a reasonable doubt.

*Commonwealth v. Smith*, 146 A.3d 257, 263 (Pa.Super. 2016) (quotation marks and citations omitted). "It is well settled that facts giving rise to mere 'association,' 'suspicion' or 'conjecture,' will not make out a case of constructive possession." *Commonwealth v. Valette*, 613 A.2d 548, 551 (Pa. 1992). Thus, we have established that a minimum requirement in constructive possession cases is that the defendant have knowledge of the item's existence. *Commonwealth v. Hamm*, 447 A.2d 960, 962 (Pa.Super. 1982) ("At the least, the evidence must show that the defendant knew of the existence of the item.") (citations omitted).

The trial court summarized its conclusions regarding Appellant's sufficiency challenge as follows:

> Based on the totality of all this evidence discussed above, it was reasonable for the jury to find that Appellant was guilty of possession of the fentanyl heroin mixture and the cocaine with intent to distribute. As to the element of possession, even if Quarles was the owner of the Infiniti, was the individual who threw the contraband from the Infiniti, and who physically controlled the contraband during the incident, it does not necessarily follow that there was insufficient evidence to find that Appellant constructively possessed the contraband. On the evening in question, Appellant and Quarles were both seated in the front of the Infiniti right next to each other, and, therefore, both would have had equal access and control over the area of the car from which the contraband was thrown, and Appellant would have had the same access to and dominion over the contraband that Quarles did. Therefore, to the extent it was not Appellant who decided to fling the contraband out of the window, this fact is of no moment to establishing the element of constructive possession. These facts combined with Appellant's consciousness

of guilt which can reasonably be inferred by his flight from the Infiniti on the night in question, his subsequent absconding from his place of residence, and his failure to make any contact with his parole officer, is more than sufficient for a reasonable jury to find that the requisite element of possession was established based on the totality of the circumstances.

Trial Court Opinion, 11/8/21, at 11.

Upon review, we agree with the trial court's analysis and adopt it as our own. Viewing all the evidence admitted at trial in the light most favorable to the Commonwealth, there was sufficient evidence to establish beyond a reasonable doubt that Appellant possessed the drugs located in the blue bag. Accordingly, Appellant is not entitled to relief on this claim.

We next address Appellant's issues concerning the court's allowance of testimony from Appellant's state parole agents regarding Appellant's parole status. We consider these issues mindful of the following:

An appellate court may reverse a trial court's ruling regarding the admissibility of evidence only upon a showing that the trial court abused its discretion. In determining the admissibility of evidence, the trial court must decide whether the evidence is relevant and, if so, whether its probative value outweighs its prejudicial effect.

***Commonwealth v. Matthews***, 783 A.2d 338, 339–40 (Pa.Super. 2001) (cleaned up).

According to Appellant, the trial court first erred by allowing the parole agents to testify because they "directly implicated that Appellant had a prior criminal offense." Appellant's brief at 13 (cleaned up). Secondly, Appellant contends the court erred in allowing additional testimony regarding Appellant's

behavior while on supervision, *i.e.*, his failure to report or notify agents of a change in address when he absconded, because these technical parole violations were not relevant or probative. *Id*. at 16-17. Appellant insists that introduction of these prior bad acts was nothing more than an "attempt to persuade the jury that the fact Appellant committed crimes and digressions in his past . . . must mean he is guilty of these offenses." *Id*. at 17.

> Pennsylvania Rule of Evidence 404(b) provides as follows:
>
> (1) Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.
>
> (2) Evidence of other crimes, wrongs, or acts may be admitted for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident.
>
> (3) Evidence of other crimes, wrongs, or acts proffered under subsection (b)(2) of this rule may be admitted in a criminal case only upon a showing that the probative value of the evidence outweighs its potential for prejudice.

Pa.R.E. 404(b).

In **Matthews**, this Court considered the admissibility of testimony identifying a witness as defendant's parole officer as follows:

> By informing the jury that DeSantis is Appellant's parole officer, the Commonwealth in effect told the jury that Appellant is a convicted criminal; that Appellant's criminal conviction was for an offense serious enough that it resulted in incarceration (one can only be on parole after a period of incarceration). When reviewed in light of Pa.R.E. 404(b), this evidence presented by the Commonwealth clearly constitutes evidence of other crimes committed by Appellant.

**Matthews**, **supra** at 340.

As in **Matthews**, the evidence that Appellant was on parole constituted evidence of other crimes committed by Appellant. In support of admission, the Commonwealth argued that Appellant's abscondence from parole was "highly relevant as to consciousness of guilt and flight thereafter and motive as to why he ran." N.T., 5/17/21-5/20/21, at 11. Finding that "flight is always relevant," the trial court allowed the testimony but cautioned the Commonwealth not to elicit the crimes underlying Appellant's parole. **Id**. at 13. In its opinion to this Court, the trial court elaborated:

> Appellant's abscondence from his parole address along with his failure to report to his parole officer has potentially broader implications as to Appellant's **continuing** state of mind and consciousness of guilt in the weeks and months after the night in question. Therefore, we believe that the testimony regarding Appellant's abscondence from his parole address had substantial probative value on its own, even considering the additional evidence regarding Appellant's flight from the Infiniti.

Trial Court Opinion, 11/8/21, at 15 (emphasis in original).

At trial, the Commonwealth cited **Commonwealth v. Soto**, 202 A.3d 80 (Pa.Super. 2018), in support of admission of this testimony. In **Soto**, this Court found that two references to Soto's parole status were "relevant to explain his flight from the accident scene and show motive for his attempts to avoid the police. **Id**. at 101 (citation omitted). In so concluding, we noted that the references "were not so unfairly prejudicial as to outweigh the relevance of the evidence." **Id**. (footnote omitted). Appellant rejects this argument raised by the Commonwealth, contending that the Commonwealth could have sought a consciousness of guilt instruction based on Appellant's

attempt to avoid apprehension for the arrest warrant issued for the charges herein. *See* Appellant's brief at 15-16.

We find our decision in **Commonwealth v. Santiago**, 822 A.2d 716 (Pa.Super. 2003) particularly instructive. Therein, Santiago had sought to suppress evidence of his change in travel plans to leave the country as well evidence that he failed to inform his parole officer of the change. The trial court denied the motion to suppress evidence of his change in travel plans. However, in balancing the probative value and potential for prejudice, the trial court determined that the prejudicial impact of the parole evidence outweighed its probative value, so the court granted that portion of Santiago's motion. On appeal to this Court, the Commonwealth argued that the trial court erred in suppressing the parole evidence because Santiago's failure to inform his parole officer of the change constituted a parole violation and showed a heightened consciousness of guilt and willingness to violate parole to avoid apprehension. *Id*. at 727-28. Upon review, we agreed with the trial court:

> Initially, we note that the fact that Santiago changed his travel plans without the permission of his parole officer does not fall within one of the traditionally admissible categories [in Pa.R.E. 404(b)(2)]. Moreover, when a jury is informed that an accused is on parole, they are being advised that the accused is a convicted criminal and that the criminal conviction was for an offense serious enough that it resulted in incarceration (since one can only be on parole after a period of incarceration). Given the high prejudicial value of this evidence balanced against its limited probative value, we do not find that the trial court abused its discretion in limiting this evidence to the plans of flight to show consciousness of guilt and excluding reference to Santiago's parole.

- 12 -

*Id*. at 728–29 (cleaned up).

As observed by Appellant, the Commonwealth could have and did introduce evidence of Appellant's heightened and continued consciousness of guilt beyond his initial fleeing from the Infiniti via evidence that he could not be apprehended from the date of his arrest warrant in September 2019 until June 2020. Adding on that Appellant also failed to (1) report to his parole officer for that same period of time, (2) provide notice of his change in address, or (3) relay the circumstances surrounding the incident to the officer was of limited probative value given the highly prejudicial impact of informing the jury that he was on parole.[3]

Nonetheless, we observe that Appellant may not be entitled to relief if the error was harmless. "The harmless error doctrine, as adopted in Pennsylvania, reflects the reality that the accused is entitled to a fair trial, not a perfect trial." **Commonwealth v. Rasheed**, 640 A.2d 896, 898 (Pa. 1994). This Court will find harmless error if the certified record establishes that either:

> (1) the error did not prejudice the defendant or the prejudice was *de minimis*; or (2) the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so

---

[3] We note that when evidence is admitted pursuant to Pa.R.E. 404(b)(2), "the party against whom it is offered is entitled, upon request, to a limiting instruction." Pa.R.E. 404, *Comment*; **see also Commonwealth v. Hutchinson**, 811 A.2d 556, 561 (Pa. 2002). Appellant's trial counsel objected to the admission of this evidence before trial but did not request a cautionary instruction and the trial court did not provide one of its own volition.

insignificant by comparison that the error could not have contributed to the verdict.

***Commonwealth v. Hairston***, 84 A.3d 657, 671–72 (Pa. 2014) (citations omitted). We have cautioned that a finding under the third prong "is not to be arrived at lightly. Accordingly, we have been reluctant to find an error harmless on the basis of overwhelming evidence." ***Rasheed***, ***supra*** (cleaned up). Finally, "the burden of establishing that the error is harmless beyond a reasonable doubt rests upon the Commonwealth." ***Id***.

In the Commonwealth's half-page argument, it fails to meet this burden as it does not assert or even attempt to prove that any error in the admission of the testimony was harmless. Instead, The Commonwealth contends that the testimony was relevant to establish Appellant's "continued state of mind and consciousness of guilt[.]" Commonwealth's brief at 4. Even assuming the Commonwealth attempted to sustain its burden, we do not find any of the three prongs satisfied herein. As discussed, the testimony was prejudicial. Moreover, it was not cumulative of other untainted evidence. Finally, we cannot conclude that "the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict." ***Hairston***, ***supra***. Thus, the admission of this testimony was not harmless error.

Therefore, we conclude that the trial court abused its discretion in admitting testimony that Appellant was on parole in violation of Pa.R.E. 404(b) and Appellant is entitled to a new trial. Accordingly, we vacate Appellant's

- 14 -

judgment of sentence and remand for a new trial. Given our resolution of these issues, we do not reach Appellant's weight challenge.

Judgment of sentence vacated. Case remanded for a new trial. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 03/15/2022